Allen JOHNSON and Li Yen Johnson, On Behalf of Themselves and All Others Similarly Situated, Appellants–Plaintiffs,

v.

Gary COLIP, Appellees–Defendants.

No. 41S04–9511–CV–1316.

Supreme Court of Indiana.

Nov. 30, 1995.

Steven H. Frank, Carter & Leerkamp, Indianapolis, James F.T. Sargent, Sargent & Meier, Greenwood, for appellant.

R. Reid Nelson, Hume Smith Geddes & Green, Indianapolis, for appellee.

## ON PETITION TO TRANSFER

SULLIVAN, Justice.

This case requires us to explore the circumstances under which a securities lawyer who attends a meeting of prospective investors can be held to be an "agent" of the securities' issuer as that term is defined in the Indiana Securities Act (the "Act").

### Facts

Gary Colip, an attorney, was retained in early 1983 to incorporate and represent a corporation established to serve as general partner in several limited partnerships comprising interests in oil properties. He was also responsible for drafting the prospectus used to solicit investors in the partnerships.

This action was commenced in April of 1985 by two complaints in which Allen and Li Yen Johnson alleged that the partnership interests they contracted to buy were sold in violation of the Indiana Securities Act, Ind. Code §§ 23–2–1–1 *et seq.* (1982 & 1983 Supp.). They contended that the prospectuses utilized in the sale contained misleading, untrue statements of material fact, or omitted to state material facts. The com-

plaints were subsequently amended to allege that Colip acted "in concert with" the other defendants in preparing or drafting the misleading prospectuses. Colip moved for summary judgment on both of the Johnsons' complaints; the trial court then consolidated the Johnsons' actions.

The complaint was amended again to allege that Colip "further acted in concert with the other Defendants herein, and effectuated or attempted to effect purchases or sales of securities herein." After a hearing, the trial court granted Colip's motion for summary judgment, "pursuant to *Ackerman v. Schwartz* (N.D.Ind.1989), 733 F.Supp. 1231." The Johnsons appealed and the Court of Appeals reversed in a non-published opinion, *Johnson v. Colip* (1994), Ind.App. 627 N.E.2d 454. We will state additional facts where necessary.

## I

This case arises under the Indiana Securities Act, our state's contribution to the body of Blue Sky laws adopted by each state. Although not as well known as their federal counterparts, these statutes for the most part pre-date by many years the enactment of the first federal securities acts in 1933 and 1934 [1] and in many cases provide more rigorous standards for the offer and sale of securities than does the federal regime.[2] And in a time apparently characterized by federal retrenchment in this area,[3] state regulation of securities may serve an increasingly important role both in protecting investors and

assuring issuers of a level playing field when they compete for capital.

## II

The Indiana Securities Act as in effect in December, 1983, the date of the conduct at issue in this case, provided a private cause of action against every "agent" of a seller or purchaser of securities "who materially aids in the sale or purchase ... unless that person who is so liable sustains the burden of proof that he did not know, and in the exercise of reasonable care, could not have known of the existence of the facts by reason of which the liability is alleged to exist." Ind.Code § 23–2–1–19 (1982). Another section of our Securities Act defines the term "agent" to be:

> Any individual, other than a broker-dealer, who represents a broker-dealer or issuer in effecting or attempting to effect purchasers or sales of securities. A partner, officer, or director of a broker-dealer or issuer or a person occupying a similar status or performing similar functions is an agent only if he effects or attempts to effect a purchase or sale of securities in Indiana.

Ind.Code § 23–2–1–1(b) (1983 Supp.).[4] At issue is whether a genuine issue of material fact exists as to whether Colip was an agent of the other defendants and, if so, whether he "materially aided in the sale of securities herein" and was, therefore, liable to plaintiffs under the Act.

---

1. *See generally* Louis Loss and Joel Seligman, 1 *Securities Regulation* 29–41 (3d ed, 1989); Louis Loss and Edward M. Cowett, *Blue Sky Law* 3–10 (1958).

2. In fact, Professor Loss suggests that Congress may very well not have been satisfied with the relatively mild disclosure philosophy of the Securities Act of 1933 if Blue Sky laws had not been on the books. Loss and Seligman, 1 *Securities Regulation* at 59.

3. *See, e.g.,* Diana B. Henriques, "Efforts to Harness S.E.C. Worry Agency Critics Too," New York Times A1 (Oct. 23, 1995); "Senate Appropriations Committee Votes to Slash SEC Funds by 20 Percent," 27 Securities Reg. & L.R. 1445 (Sept. 15, 1995); "Securities Litigation Bill

Clears Senate 70 to 79," 27 Securities Reg. & L.R. 977 (June 30, 1995).

4. There are several statutory exemptions. Individuals who represent issuers purchasing or selling (1) United States, state or local securities, (2) Canadian securities, (3) bank securities, (4) commercial paper, or (5) employees' benefit plans are not "agents." Ind.Code § 23–2–1–1(b)(1) (1983 Supp.). Issuers' agents engaged in an *exempt securities transaction* are also outside the scope of the Act. Ind.Code § 23–2–1–1(b)(2). Finally, issuers' agents are outside the scope of the Act when "effecting transactions with existing employees, partners, or directors of the issuer, if no commission or other remuneration is paid or given directly or indirectly for soliciting any person in this state." Ind.Code § 23–2–1–1(b)(3). There is no contention that any of these exemptions apply in this case.

## A

The provisions of the Act quoted above, Indiana Code §§ 23–2–1–1(b) and 19, are based substantially upon §§ 401(b) and 410 of the Uniform Securities Act of 1956. The comment to § 401 of the Uniform Act notes that whether a particular individual who represents an issuer is an "agent" depends "upon much the same factors which create an agency relationship at common law. That is to say, the question turns essentially on whether the individual has manifested a consent to the ... issuer to act subject to his control." Unif.Sec.Act § 401, 7B U.L.A. 581 (1985). Indiana courts have long made the same inquiry to determine the existence of an agency relationship. *Dep't of Treasury v. Ice Service* (1942), 220 Ind. 64, 67–68, 41 N.E.2d 201, 203; *Mullen v. Cogdell* (1994), Ind.App., 643 N.E.2d 390, 398. This determination is usually a question of fact, *Ice Service*, 220 Ind. at 68, 41 N.E.2d at 203. Given the extensive amount of work that Colip performed for the corporation, we see little basis for granting Colip summary judgment if a common law agency relationship is all that is required to create an "agent" for purposes of the Act.

## B

But while one must be a common law agent to be an "agent" under the Act, we perceive the Act as containing additional requirements as well. That is, whether Colip is an agent within the meaning of the Act turns on whether he effected or attempted to effect purchases or sales of securities.

This question has not been previously addressed by Indiana appellate courts but has been examined by Judge Miller in federal district court. In *Ackerman v. Schwartz*, 733 F.Supp. 1231 (N.D.Ind.1989), *aff'd in part and rev'd in part on other grounds*, 947 F.2d 841 (7th Cir.1991), investors in an equipment leasing program brought suit against an attorney who wrote a tax opinion letter and the attorney's firm. The defendants moved for summary judgment, claiming that they were not agents within the meaning of the Indiana Securities Act. In construing the definition of "agent" in the Act, the district court examined the meaning of the verb "effect." The court held that liability under the Act requires "more than the mere drafting of an opinion letter," but that liability could be imposed if the attorney and his firm had "personally and actively employed the opinion letter to solicit investors." *Id.* at 1252.

In *Baker v. Miles & Stockbridge*, 95 Md. App. 145, 620 A.2d 356 (1993), the Maryland Court of Special Appeals conducted an extensive survey of the law in other jurisdictions in addressing this question.[5] On appeal in the Maryland case was defendant lawyer's motion for summary judgment on the Blue

---

5. The cases reviewed by the Maryland Court were: *Rendler v. Markos*, 154 Wis.2d 420, 453 N.W.2d 202, 206 (Wis.Ct.App.1990) ("The definition of agent ... does not include attorneys who merely render legal advice or draft documents for use in securities transactions. The definition covers persons who assist directly in offering securities for sale, soliciting offers to buy, or performing the sale, but who do not fit the definition of broker-dealer. It is not intended to cover professionals such as attorneys engaging in their traditional advisory functions."); *Ackerman v. Schwartz*, 733 F.Supp. 1231 (discussed *supra*); *In re North American Acceptance Corp. Sec. Cases*, 513 F.Supp. 608, 623 (N.E.Ga.1981) ("To hold an individual to be an agent who has participated or aided in making sales of securities, the Court must find that the individual was so entangled in the actual sale of the security that his activities were at least a substantial factor in the purchaser's decision to buy the security and that his activities were either authorized by or ratified by the issuer."); *Excalibur Oil, Inc. v. Sullivan*, 616 F.Supp. 458, 467 (N.D.Ill.1985) (held that the purchaser had stated a claim because of the direct role the attorney played in the sale of the leases where the attorney's direct role included "face-to-face and direct telephonic representations" to the purchaser); and *Ahern v. Gaussoin*, 611 F.Supp. 1465, 1491 (D.Or.1985) ("[W]hen an attorney prepares, attends to the execution of, and personally delivers and files documents required for the registration of a security with the knowledge that solicitation and sales of such security have already been made, such conduct goes beyond what plaintiff describes as the "preparation of documents and other services normally performed by a lawyer for a client" so as to constitute "participa[tion]" or "materially aid[ing]" in the sale of such security" (quoting *Adams v. Am. W. Sec., Inc.*, 265 Or. 514, 510 P.2d 838 (1973)).).

*See also CFT Seaside Inv. Ltd. Partnership v. Hammet*, 868 F.Supp. 836, 837 (D.S.C.1994) (Definition of agent in South Carolina securities statute "does not include attorneys who merely render legal advice or draft documents for use in securities transactions.").

Sky act contribution claims of plaintiff dealer-manager of a private offering of securities. Resolution of this issue turned on whether the dealer-manager had presented sufficient facts to establish the existence of an agency relationship between the parties. After reviewing the cases cited in footnote 5, *supra*, the Maryland court observed,

> Although the definition of 'agent' in the state securities laws discussed above may vary to differing degrees from the definition [of agent in the Maryland Blue Sky Act], they each have one thing in common: they do not impose liability upon an attorney who merely provides legal services or prepares documents for his or her client. To impose liability, the attorney must do something more than act as legal counsel.

*Id.,* 620 A.2d at 368. The court then held that "an attorney could conceivably be considered an agent if he or she represents a broker-dealer or issuer in *effecting or attempting to effect* the purchase or sale of securities." In order to be considered an agent, an attorney must

> act in a manner that goes beyond legal representation. The definition of "agent" in § 11–101(b) does not include attorneys who merely provide legal services, draft documents for use in the purchase or sale of securities, or engage in their profession's traditional advisory functions. To rise to the level of "effecting" the purchase or sale of securities, the attorney must actively assist in offering securities for sale, solicit offers to buy, or actually perform the sale.

*Id.*

We agree with the approaches taken by the courts in these cases and hold that an attorney is an agent if his or her affirmative conduct or failure to act when reasonably expected to do so at a meeting of prospective investors made it more likely than not that the investors would purchase the securities than they would have been without such conduct or failure to act.

## C

■ In reversing the summary judgment entered in favor of Colip, the Court of Appeals wrote:

In attending meetings of prospective investors to answer legal questions concerning the prospectuses, Colip left the realm of an attorney-client relationship to advise third-parties on partnership matters which, one can infer, constituted an attempt to persuade or reassure potential investors and to effect the sale of securities. By "explaining the legal ramifications of the limited partnerships" to prospective investors, Colip was not acting as legal counsel to the Corporation but may have "personally and actively" participated in marketing the limited partnerships. Therefore, the Johnsons have shown that a genuine issue of material fact exists upon undisputed facts regarding whether Colip was an agent of the issuer who materially aided in the sale of securities and, thus, violated the Act. *See McGee v. Bonaventura* (1993), Ind.App., 605 N.E.2d [792,] 793–94. A question of fact remains whether the nature and extent of Colip's participation would make him liable.

While we agree with the Court of Appeals that summary judgment was not appropriate, our analysis differs somewhat. Specifically, we are unable to infer with the same degree of certainty of the Court of Appeals that Colip's attendance at meetings of perspective investors constituted an attempt to effect the sale of securities. Certainly it may have done so and we believe that the determination as to whether or not it did constitutes an issue of fact inappropriate for resolution at summary judgment. For example, if when called upon at the meetings, Colip primarily reassured investors that risks about which they expressed concern were unlikely to materialize, such behavior made it more likely than not that the investors would purchase the securities and constituted an attempt to effect a purchase or sale. On the other hand, if Colip's principal function at the meeting was to either temper the exuberance of the principal promoters (a frequent reason why lawyers are asked to accompany "road shows" promoting new securities' offerings) or to discuss the technical aspects of the partnership agreement or its tax consequences with counsel for prospective investors (much as would occur in the negotiations

in any reasonably sophisticated business transaction), we think these facts are not susceptible to the inference that an attempt to effect the purchase or sale of a security occurred. We hold that a genuine issue of material fact remains as to whether Colip's affirmative conduct or failure to act when reasonably expected to do so at a meeting with prospective investors made it more likely than not that the investors would purchase the securities and therefore constituted an attempt to effect the purchase or sale of the securities.[6] Finally, we note that under Indiana Code § 23–2–1–19 Colip does have the opportunity to demonstrate to the finder of fact that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist.

### Conclusion

We reverse the grant of summary judgment in favor of Colip and remand this matter to the trial court for further proceedings consistent with this opinion.

SHEPARD, C.J., and DeBRULER, DICKSON, and SELBY, JJ., concur.

---

6. Colip contends that with respect to certain of the partnerships, he never attended investor meetings with respect thereto. If there is no contention on the part of plaintiffs that he did attend or that he acted as a statutory agent for the issuers in any other respect, it would appear to us that summary judgment for Colip in respect of those partnerships would be appropriate.